

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-10-2000

# Narin v Lower Merion Sch. Dist.

Precedential or Non-Precedential:

Docket 99-1029

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Narin v Lower Merion Sch. Dist." (2000). *2000 Decisions*. Paper 52.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/52

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 10, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1029

SANDRA G. NARIN
        Appellant

v.

LOWER MERION SCHOOL DISTRICT

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 97-cv-6376)
District Judge: Honorable J. Curtis Joyner

Argued: November 2, 1999

Before: NYGAARD, MCKEE and ROSENN,
Circuit Judges.

(Filed March 10, 2000)

        Theodore R. Mann (Argued)
        Neil C. Gever
        Mann, Ungar, Spector & Labovitz
        1709 Spruce Street
        Philadelphia, PA 19103

        Counsel for Sandra G. Narin


        Kenneth A. Roos (Argued)
        Justin M. O'Donoghue
        Wisler, Pearlstine, Talone, Craig,
         Garrity & Potash, LLP
        484 Norristown Road -- Suite 100
        Blue Bell, PA 19422-2326

        Counsel for Lower Merion School
        District

OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal provides an excellent illustration of the
difficulties that confront a claimant under the Age
Discrimination in Employment Act (ADEA). 29 U.S.C.S 621

et seq. The plaintiff, Sandra G. Narin, applied for ten different teaching positions with the defendant, Lower Merion School District. The school district did not hire her for any of these positions, and it filled some of them with substantially younger applicants.

Narin sought relief under the ADEA in a suit shefiled in the United States District Court for the Eastern District of Pennsylvania. The district court granted summary judgment in favor of Lower Merion on nine of her eleven claims of discrimination brought pursuant to that Act. The remaining two claims were tried to a jury, which returned a verdict in favor of Lower Merion. Before the conclusion of the trial, Narin uncovered additional evidence that cast doubt on the propriety of some of the district court's summary judgment rulings. She did not, however, request the district court to reconsider its rulings or grant her a new trial on the basis of the newly discovered evidence.

After the trial and entry of judgment, Narin timely appealed. Although this is a troublesome case, after hearing oral argument and carefully reviewing the record and briefs, we are constrained to affirm.

I.

Narin was born on April 2, 1941. From 1958 to 1962, she attended Bryn Mawr College where she earned a bachelor's

degree in Russian with honors. From 1962 to 1965, Narin attended the University of Pennsylvania where she received a doctorate in Russian language. From 1980 to 1983, Narin attended Villanova University School of Law where she acquired a law degree. In 1994, Narin obtained teaching certifications in French and Russian from Bryn Mawr College. In 1996, Narin also obtained a teaching certification in English from Eastern College.

Narin completed her student teaching program in the Lower Merion School District during the Spring of 1994. Thereafter, she served as a .2 long term substitute French teacher in the Lower Merion School District for the 1994-95 school year.1 This position, which was temporary from the start, was eliminated as planned at the end of the school year. Narin, however, continued to work as a per diem substitute in the Lower Merion School District for the next two school years. During the 1995-96 school year, Narin substituted on 118 days out of the 180-day school year. During the 1996-97 school year, Narin substituted on 130 days. While working as a per diem substitute, Narin applied for ten different teaching positions in the Lower Merion

School District.

First, she applied to teach French in a foreign language pilot program to be implemented at Cynwyd Elementary School. ("Count I"). She applied for this position by sending a letter dated April 15, 1996 to William Kearns, the director of personnel for the Lower Merion School District. Kearns replied to Narin by letter dated April 17, 1996 and informed her that, if the school board approved the pilot program, a fractional teacher would be needed for the 1996-97 school year. Although the program was later approved, Narin was neither hired nor interviewed for the position. Sandra Dunn, to whom Kearns delegated the responsibility of selecting applicants for interviews, testified in her deposition that she did not remember reviewing Narin's application, but probably would not have been interested in

_____

1. ".2" designates that the position involved 20% of the workload handled by a full-time teacher. A "long term substitute position" arises when there is a need to fill an extended, albeit temporary, vacancy such as when a teacher takes maternity or paternity leave.

3

Narin because she (i.e., Dunn) "very clearly wanted someone who had experience teaching, if not elementary school, at least middle school." Jt. App. at 161. Marie Wells, age 34, was ultimately hired for the position. Although, like Narin, Wells lacked full-time elementary teaching experience, Wells had developed and run an after-school French program for second, third, and fourth graders. Wells also taught middle school from 1986 to 1989.

Second, Narin applied for a position as a "Challenge Teacher" at Cynwyd Elementary School. ("Count III").2 Narin first expressed interest in this position in her April 15, 1996 letter to Kearns. At that time, however, the position was not yet posted, and Kearns did not respond to Narin's inquiries in regard to it. After the position was posted formally on April 25, 1996, Narin sent another letter to Kearns dated April 29, 1996, in which she reexpressed interest in the "Challenge Teacher" position. Again, however, Narin was not interviewed for the position. In his declaration in support of summary judgment, Kearns stated that Narin was neither hired nor interviewed for the position because she lacked experience teaching at the elementary school level and did not possess an elementary education certification. Lower Merion ultimately hired Jill Horak, age 43, who possessed both.

Third, Narin applied "for the position of regular education

teacher for all four major subjects in an alternative setting." ("Count IV"). She did so by sending a letter to Kearns dated April 29, 1996. Narin was never interviewed or contacted in regard to this position. Throughout discovery and in its motion for summary judgment, Lower Merion, relying on Kearns' affidavit and deposition testimony, contended that the position did not exist. In response, Narin pointed to a portion of her deposition, in which she testified that she had read about the position in the paper and that

_____

2. Narin first contended that there were two "Challenge Teacher" positions, and her complaint included two Counts (II and III) based on those positions. However, at summary judgment she only produced evidence that one such position existed. Accordingly, only the Count III "Challenge Teacher" position will be discussed in this opinion.

4

"Domenick someone" had been hired for it. 3 Narin also attached a copy of the formal posting for the position as an attachment to her sur-reply to Lower Merion's motion for partial summary judgment on the statute of limitations.4

Fourth, at the suggestion of Nancy Pertschuk, the chairperson of the Harriton High School English Department, Narin applied for a position to teach English at Harriton High School for the 1996-97 school year. ("Count V"). She applied by sending a letter to Kearns dated July 30, 1996. Narin was interviewed for the position on August 1, 1996 by Pertschuk and Harriton High School's principal, Norton Seaman. Seaman, who possessed the authority for the hiring decision, subject to final approval by the superintendent, testified in his deposition that he chose Kathy Bress, age 38, over Narin because he believed that Bress performed better in her interview. Pertschuk, who stated that Narin was her first choice, also stated that Kathy Bress was on her "short list" for the position and that her leanings toward Narin probably reflected her friendship with Narin.

Fifth, on October 21, 1996, Narin applied for a .6 long-term substitute position teaching French at Bala Cynwyd Middle School. ("Count VI"). Again, she did so by sending a letter to Kearns. Narin followed up with her application on several occasions. Between October and January, she made four phone calls to Lower Merion's personnel office in regard to the position, however, Narin was not interviewed until January 7, 1997. When she was interviewed, it was by Kearns and Dunn, who allegedly did not come away with a favorable impression. Both Kearns and Dunn stated that while they were impressed with Narin's academic

_____

3. After summary judgment was entered against Narin, she learned the identity of the person actually hired. "Domenick someone" turned out to be Domenick Pavia, age 35.

4. The posting, which ran in the April 28, 1996 Philadelphia Inquirer, stated:

> Lower Merion School District has the following High School openings for the 96-97 school year . . . Regular education but MULTI CERTIFIED -- 6 -10 students teaching all four major subjects. Must have experience teaching in an alternative setting.

5

background they were concerned by Narin's lack of middle school experience. The two also felt that Narin performed poorly in her interview. Ultimately, the two recommended Julia Proger, a 23-year old with no experience teaching middle school students. Narin testified in her deposition that during the interview, Dunn asked her whether she "as a person who is returning to teaching at [her] age, after so long a time, could possibly adapt to the new humanistic methods."5

Sixth, on December 19, 1996, Narin applied for a .4 long-term substitute position teaching English at Bala Cynwyd Middle School. ("Count VII"). Again, she applied by sending a letter to Kearns. Lower Merion contends that by the time Kearns received Narin's application, it had already hired Andrew Thomas, age 24.

Seventh, on March 9, 1997, Narin applied for a long-term substitute position teaching English at Lower Merion High School. ("Count VIII"). Again, she did so by sending a letter to Kearns. Narin was interviewed for the position on March 19, 1997 by Dr. Maher, Lower Merion High School's principal, and Dr. Hay, Lower Merion's coordinator of language arts. Dr. Maher rated Narin's interview performance as average. Dr. Hay rated Narin's interview performance slightly higher, but expressed concern about Narin's lack of full-time English-teaching experience. Ultimately, Dr. Maher, who had authority to make the hiring decision, subject to approval by the superintendent, recommended Deborah Gavin, age 27, instead of Narin. Dr. Maher and Dr. Hay both rated Gavin's interview performance highly and thought Gavin an "excellent fit" for the position.

Eighth, on May 12, 1997, Narin applied for a full-time position teaching English at Lower Merion High School. ("Count IX"). Again, Narin did so by sending a letter to Kearns. Narin was granted an interview for the position. Dr.

Maher, Lower Merion High School's principal, conducted

_____

5. Narin also presented evidence that Kearns, during a 1996 faculty meeting, stated something to the effect that if anyone thought that Lower Merion hired only experienced teachers, one had but to look around at all the new young faces to dispel that idea.

the interviews for the position in July of 1997. Dr. Maher's first choice for the position was Marsha Pincus, age 45. Pincus, however, withdrew her name from consideration after she was selected as the top candidate. Dr. Maher then extended an offer to Deborah Gavin, age 27. Dr. Maher stated that he chose Gavin over Narin because Gavin performed better in her interview and because he had been favorably impressed with Gavin during her prior position as a long term substitute.

Ninth, and also on May 12, 1997, Narin applied for a.8 long-term substitute position teaching English at Harriton High School. ("Count X"). She expressed her interest in the position by sending a letter to Kearns. Narin was granted an interview for this position. Harriton High School principal Joel Bartolomeo, Lower Merion School District gifted education supervisor Cecil Frey, Harriton High School assistant principal William Loue, and student council president Benjamin Getto conducted the interviews for the position, including Narin's. Based on the interviews, the committee's first choice for the position was Rayna Goldfarb, age 51. When Goldfarb withdrew her name from consideration, the committee opted to extend an offer to Rita Lerario, age 49. Out of the five candidates interviewed for the position, the committee ranked Narin fourth.

Tenth, on June 19, 1997, Narin applied for a Challenge Teacher position at Welsh Valley Middle School. ("Count XI"). Again, she was not hired. Lower Merion contends that it did not interview any candidates for this position. Instead, it asserts that when Frank Panaia, a 54-year old social studies teacher at Welsh Valley, applied for a transfer, Lower Merion offered him the position.

Finally, Narin also alleged that she was not hired for a number of instructional aide positions. ("Count XII"). However, Narin does not identify any specific instructional aide position for which she applied and was not hired.

Understandably, Narin was extremely frustrated by Lower Merion's repeated rejections of her applications. She believed the rejections to be a result of her age rather than her qualifications, and, on June 10, 1997, she filed a

charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). After receiving a right to sue letter, Narin filed a complaint in the United States District Court for the Eastern District of Pennsylvania. In her complaint she alleged that Lower Merion's repeated refusals to hire her constituted age discrimination, in violation of the ADEA.

After a lengthy period of discovery, Lower Merionfiled two motions for summary judgment: a motion for summary judgment on all counts and a motion for partial summary judgment based on the statute of limitations. In its motion for summary judgment on all counts, Lower Merion contended that with respect to each position for which Narin applied and was rejected, Narin either failed to establish a prima facie case or produced no evidence to suggest that Lower Merion's legitimate, nondiscriminatory reasons for not hiring her were pretext. In its motion for summary judgment based on the statute of limitations, Lower Merion asserted that Counts I through V of Narin's complaint were time barred under 29 U.S.C. S 626(d)(2) because the alleged unlawful employment practices underlying these Counts occurred more than 300 days before Narin filed her complaint with the PHRC and the EEOC.

The district court first considered Lower Merion's motion for summary judgment on all counts. It carefully reviewed the evidence produced during discovery and reached the following conclusions. First, with respect to Count IV, the district court determined that Narin failed to state a prima facie case of age discrimination because she produced insufficient evidence to demonstrate that the Count IV position had been filled with someone sufficiently younger to permit an inference of age discrimination. Next, with respect to Count III and Counts VII through XI, the district court determined that although Narin established a prima facie case as to these Counts, she failed to present evidence from which a reasonable trier of fact could conclude that Lower Merion's legitimate, nondiscriminatory reasons for not hiring her were pretext for age discrimination. Finally, with respect to the instructional aide positions referred to in Count XII, the district court reasoned that Narin failed to

establish a prima facie case because she could not show that she applied for, or expressed interest in, these

positions.

After disposing of Lower Merion's motion for summary judgment on all counts, the district court turned to Lower Merion's motion for partial summary judgment based on the statute of limitations. Although the motion was directed at Counts I through V, the district court only addressed Counts I and V because it had already disposed of the other Counts in addressing Lower Merion's motion for summary judgment on all counts. As to Count I, the district court concluded that Lower Merion failed to demonstrate that Narin's cause of action accrued prior to the 300 day limitations period established by 29 U.S.C. S 626(d)(2). It therefore denied summary judgment on that Count. As to Count V, the district court found that Narin's cause of action had accrued outside of the 300 day limitations period and that the cause of action was therefore barred.

The only Counts remaining, Counts I and VI, were tried to a jury, which returned a verdict in favor of Lower Merion.

II.

Narin contends that the district court erred in granting summary judgment on Counts III through V and Counts VII through XII. With respect to Count IV, Narin contends that the district court incorrectly determined that she failed to establish a prima facie case of discrimination. With respect to Count III and Counts VII through XII, Narin argues that, although she failed to produce any evidence to demonstrate that Lower Merion's reasons for not hiring her for the positions underlying these Counts were pretext, the district court nevertheless erred in granting summary judgment on them because it "erroneously considered each rejected application in isolation from all others and ignored the principle that if some of the proffered reasons advanced by a defendant employer are prextextual, `a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available.' " App. Br. at 7 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 n. 7 (3d Cir. 1994)). As to Count

V, Narin argues that the district court incorrectly concluded that this claim was time barred under 29 U.S.C.S 626(d)(2).

We undertake plenary review of the district court's grant of summary judgment, see Fuentes, 32 F.3d at 763, and address each of Narin's contentions.6

A.

To establish a prima facie case of age discrimination under the ADEA, a plaintiff must establish that: (1) she was over 40 at the time she applied for the position in question; (2) she was qualified for the position in question; (3) despite her qualifications she was rejected; and (4) the employer ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination. See Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995). Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995). The district court concluded that Narin failed to establish a prima facie case as to Count IV because she could not establish that the position was filled by someone sufficiently younger to permit an inference of age discrimination.

At the time the district court entered summary judgment on Count IV, Narin only presented evidence that "Domenick somebody" had been hired to fill the teacher in the alternative setting position. She did not know the

_____

6. As a preliminary matter, we note that counsel for Lower Merion has submitted a letter pursuant to Federal Rule of Appellate Procedure 28(j), in which he contends that the Supreme Court's decision in Kimel v. Florida Board of Regents, ___ U.S. #6D6D 6D#, 120 S.Ct. 631 (2000) renders the ADEA inapplicable to Lower Merion. This contention is meritless. In Kimel, the Supreme Court held "only that, in the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals." Lower Merion, however, is not a state or an arm of the state for eleventh Amendment purposes and therefore is not entitled to sovereign immunity. See Lester H. v. Gilhool, 916 F.2d 865, 870-71 (3d Cir. 1990) cert. denied, 499 U.S. 923 (1991)(holding that school districts do not share in the Commonwealth of Pennsylvania's Eleventh Amendment sovereign immunity, because they are not alter egos of the Commonwealth)(citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)).

10

individual's last name. Nor did she know his age. It was only after summary judgment was entered that Narin learned that "Domenick somebody" was actually Domenick Pavia, age 35. However, we do not understand Narin's argument on appeal to be that the district court erred in granting summary judgment on the basis of evidence she failed to present. Rather, we understand Narin to argue that her failure to produce the age and identity of the individual who ultimately filled the position should have been excused because she presented evidence at the summary judgment stage establishing that the Count IV position existed, thus severely undermining Lower Merion's repeated contention that the position did not exist.

Although we recognize that the elements of the prima facie discrimination case are not to be applied rigidly, see E.E.O.C. v. Metal Serv. Co., 892 F.2d 341, 348 (3d Cir. 1990), we do not believe the district court erred in granting summary judgment. In producing the posting that established the existence of the Count IV position, Narin undoubtedly produced evidence suggesting that she had been treated unfairly by Lower Merion. But, to survive Lower Merion's motion for summary judgment Narin needed to do more than present evidence suggesting that she had been treated unfairly by the school district. She needed to present evidence suggesting that the unfair treatment she received was a result of her age. Because Narin presented no evidence that the Count IV position was filled by someone sufficiently younger than Narin, we cannot fault the district court for not finding that it could infer age discrimination.

The appropriateness of the district court's decision to grant summary judgment on Count IV also is supported by Narin's failure to establish that she was qualified for the position: element two of the prima facie case. See Brewer, 72 F.3d at 330. The Count IV position required a multi-certified teacher with experience in an "alternative setting." Although Narin possesses certifications in two foreign languages and in English, she lacks certification to teach mathematics and science. Perhaps certifications in mathematics and science were not necessary, but the burden to establish their irrelevance was Narin's. She failed

11

to present any evidence in this regard. In addition, Narin also failed to present evidence demonstrating that she had experience teaching in an "alternative setting," which the advertisement expressly required. Although the court will not countenance any unlawful discrimination because of age, we recognize that the district court must weigh carefully the evidence or lack thereof of discrimination.

In sum, although we are disturbed by the actions of Lower Merion in insisting that the Count IV position did not exist, we do not believe that those actions, reprehensible as they may be, were sufficient to permit an inference of ADEA discrimination and excuse Narin's failure to establish two elements of the prima facie case.7 Accordingly, we are constrained to affirm the district court's grant of summary judgment as to Count IV.

B.

Narin next contends that the district court erred in

granting summary judgment as to Count III and Counts VII through XII. In this connection, Narin does not argue that the district court incorrectly concluded that she failed to produce evidence specifically directed at undercutting the credibility of Lower Merion's legitimate, nondiscriminatory reasons for not hiring her for the positions underlying these Counts. Rather she argues that summary judgment was inappropriate even in the absence of such evidence. Specifically, she asserts that the evidence of pretext with respect to Counts I, V, and VI coupled with the evidence of what she considers to be Kearns' central and deceptive role in the hiring process provided a sufficient basis from which a rational trier of fact could have concluded that all of Lower Merion's justifications for not hiring her were pretext.

_____

7. We also note that when Narin uncovered the posting for the Count IV position, the proper course would have been to request a continuance to take additional discovery. See Fed. R. Civ. P. 56(f). Alternatively, when Narin learned the age and identity of "Domenick somebody" before the commencement of the trial, she also could have requested the district court to reconsider its grant of summary judgment on the Count IV position.

12

In support of her position, Narin principally relies on this Court's decision in Fuentes. In Fuentes , this Court held that "to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered nondiscriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action." Fuentes, 32 F.3d at 764. However, in announcing this holding, we were careful to note that it is not necessary for a plaintiff to"cast doubt on each proffered reason in a vacuum." Id. at 764 n. 7. Rather, "[i]f the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder." Id. This is so "because the factfinder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available." Id. at 764–765 n. 7.

Lower Merion contends that this aspect of the Fuentes decision has no application to Narin's case. It argues that the above-quoted statements apply only in situations where the defendant offers several nondiscriminatory reasons for a single employment decision rather than where, as here,

the defendant offers separate reasons for separate employment decisions. We need not decide the issue. Even if we were to give Fuentes the expansive reading that Narin suggests, Narin's evidence of pretext with respect to Counts I, V, and VI, even when coupled with the evidence of Kearns' central and allegedly hostile role in the hiring process, would not warrant reversal of summary judgment on the remaining Counts.

First, we note that, although the district court concluded otherwise, Narin's evidence of pretext with respect to the Count V position (Harriton High School English Teacher) was insufficient as a matter of law. Principal Seaman, who possessed authority for the hiring decision, testified that he did not hire Narin for the Count V position because he felt that Narin did not perform as well in her interview as

13

another candidate, Kathy Bress. To demonstrate that this subjective justification constituted pretext, Narin principally relied on the deposition testimony of her other interviewer, Nancy Pertschuk. Pertschuk testified that she rated Narin's interview performance highly and considered Narin the top choice for the position. However, Pertschuk also testified that Kathy Bress was on her "short list" of two for the position and that her leanings toward Narin probably reflected that she was friends with Narin. Thus, rather than undercut Principal Seaman's justification for not hiring Narin, a decision made principally on the basis of a subjective interview, which is a ready tool for discrimination, Pertshuk's testimony tends to substantiate it.8

Second, as to the positions underlying Counts VIII through XI, we do not see how Narin's evidence of pretext with respect to Counts I and VI, or her evidence that Kearns lied about the existence of the Count IV position, renders summary judgment inappropriate as to those Counts. At the time Narin applied for the positions underlying Counts VIII through XI, Narin had spoken with Kearns and expressed her suspicion that Lower Merion was discriminating against her on the basis of her age. After this discussion, Kearns automatically forwarded any application he received from Narin to the building principal responsible for the hiring decision. Narin then was interviewed by several different individuals, and the record is devoid of any evidence suggesting that the justifications of these decision makers for not hiring Narin amounted to pretext. Because Kearns had nothing to do with the decisions reached in these counts, his lack of credibility may not be attributed to the hiring decisions. Thus, without evidence of pretext relevant to the justifications for not

hiring Narin for these positions, no rational trier of fact

_____

8. Accordingly, we will affirm the district court's grant of summary judgment as to Count V on the ground that Narin failed to produce sufficient evidence of pretext, rather than on the ground that the claim was time barred under 29 U.S.C. S 626. An appellate court may affirm a decision on a ground other than that relied on by the district court. Myers v. American Dental Assoc., 695 F.2d 716, 725 (3d Cir. 1982).

14

could find them unworthy of credence. See Fuentes, 32 F.3d at 764.9

Count XII likewise cannot be saved from summary judgment on the basis of Narin's evidence of pretext derived from Counts I, IV, and VI because Narin failed to establish a prima facie case with respect to Count XII. In her complaint Narin alleged that she was not hired for various instructional aide positions on the basis of her age. However, as the district court noted, the record is devoid of any evidence that Narin ever applied for these positions or expressed interest in them. Because she did not do so, she cannot predicate a claim of discrimination on Lower Merion's failure to hire her for those positions. See In re Carnegie Ctr. Assocs., 129 F.3d 290, 298 (3d Cir. 1997).

Finally, turning to Counts III and VII, we again conclude that no rational trier of fact could find that Lower Merion's justifications for not hiring Narin for the positions referred to in these Counts were pretextual. As to Count III, Lower Merion produced evidence tending to demonstrate that it did not interview Narin because she lacked elementary school teaching experience as well as an elementary school certification. Discovery revealed that the individual ultimately hired for the position possessed both. As to Count VII, Lower Merion presented evidence that it did not hire Narin for the position because it had alreadyfilled the position by the time Narin applied for it. Narin produced no evidence to contradict this legitimate, nondiscriminatory reason. Although Kearns was involved in the screening of Narin's application for both of these positions, we do not believe his actions in connection with Counts IV and VI provide a sufficient basis from which a rational trier of fact could conclude that the reasons for not hiring Narin for the above positions amounted to pretext. We believe a court must exercise caution in permitting claims to proceed to

_____

9. Moreover, we also think that as to Counts X and XI Narin failed to establish a prima facie case of discrimination. Lower Merion hired Rita Lerario, age 49, and Frank Panaia, age 54, for the Count X and XI

positions. Because these individuals' ages do not differ materially from Narin's, we cannot conclude that Lower Merion ultimately filled the Count X and XI positions with someone sufficiently younger to permit an inference of discrimination. See Brewer, 72 F.3d at 330.

15

trial on the basis of evidence of pretext presented in connection with other claims, and we therefore see no error in the district court's exercise of that caution here.

Accordingly, we will affirm the district court's grant of summary judgment as to Counts III and V and Counts VII through XII.

III.

In addition to her challenges to the district court's summary judgment rulings, Narin also challenges three evidentiary rulings of the district court. Where a party makes known the substance of the evidence she desires to introduce, we review the district court's decision to exclude the evidence for an abuse of discretion. See Walden v. Georgia Pacific Corp., 126 F.3d 506, 517 (3d Cir. 1997). However, where a party fails to make known the substance of the evidence she desires to introduce, we review only for plain error. See id.

A.

Narin first argues that the district court abused its discretion in excluding evidence related to Counts III and IV and Counts VII through XII. Specifically, she claims that "[t]he jury should have been permitted to hear evidence of pretext pertaining to one or more of the nine dismissed counts in evaluating the reasons proffered for the Count I and VI rejections." But, with respect to Count III and Counts VII through XII, Narin produced no evidence of pretext. Thus, the district court did not abuse its discretion by excluding evidence Narin simply did not have. As to Count IV, although Narin possessed evidence undermining the credibility of Kearns with respect to the Count IV position, the record does not disclose that Narin ever attempted to offer this evidence, and we perceive no plain error in the district court's failure to advise her to introduce the evidence.

B.

Narin's next argument is that the district court abused its discretion in excluding evidence of pretext produced in

16

connection with Count V. The district court excluded the evidence because it believed evidence of time barred claims inadmissible to show pretext. In our view, even assuming the district court's evidentiary ruling in this regard was erroneous, the error was harmless. First, as noted above, Narin's evidence of pretext with respect to Count V was insufficient as a matter of law and, therefore, not particularly helpful to establish pretext with respect to Counts I and VI. Second, even if Narin had produced evidence sufficient to undermine the credibility of Principal Seaman's justification for not hiring Narin for the Count V position, the evidence would still be irrelevant to Counts I and VI because Seaman had nothing to do with the decisions not to hire Narin for the positions underlying Counts I and VI.

C.

Narin's final evidentiary point is that the district court abused its discretion in excluding certain numerical evidence pertaining to Lower Merion's hiring practices. Specifically, Narin sought to introduce yearly lists containing the names and ages of the individuals hired by Lower Merion for every year beginning with 1986 and continuing through 1997. Narin asserts in this appeal, as she did in the district court, that the lists demonstrate that in 1992 Lower Merion began to hire substantially more teachers under the age of 35, and that this hiring practice continued at least until 1997.

The district court permitted Narin to offer a list for the 1996-97 school year, the time during which Narin was applying for jobs in the Lower Merion school district. However, it refused to permit Narin to introduce hiring lists for any other years on the ground that they were irrelevant. Again, we perceive no abuse of discretion. The lists Narin sought to introduce provided the ages of the individuals Lower Merion actually hired. In addition, the lists reflected that Lower Merion hired more individuals younger than forty years of age than older. However, we think these figures could only be probative of discriminatory intent if, at the very least, it also were shown that roughly equivalent numbers of over-forty and under-forty individuals applied

17

for employment with Lower Merion. Otherwise, the lists simply show that Lower Merion hires young individuals -- not that Lower Merion hires young individuals to the exclusion of older ones.

IV.

Accordingly, for the reasons set forth above, the judgment of the district court will be affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit