NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-3940
_____

JOSEPH J. CAMPBELL,

Appellant

v.

WEST PITTSTON BOROUGH;
BRIAN THORNTON; PETER MUSINSKI;
KEVIN LESCAVAGE; JOHN HOOD;
PETER ALBANO; TERRI BUGELHOLL;
JAMES ROSE

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-09-cv-00303)
District Judge:  Honorable John E. Jones, III

_____

Submitted Under Third Circuit LAR 34.1(a)
July 13, 2012

Before:  FUENTES, HARDIMAN, and ROTH, *Circuit Judges*.

(Filed: August 15, 2012)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Joseph J. Campbell appeals the District Court's summary judgment on his civil

rights claims. We will affirm.

I

Because we write for the parties, who are well acquainted with the case, we recite only the essential facts and procedural history.

In 1982, Campbell began working as a police officer in the Borough of West Pittston. He was terminated in 2005 but reinstated in 2006. That year, Campbell became Officer in Charge when the Borough's Chief of Police was injured. In February 2006, Campbell filed his first federal lawsuit against the Borough, raising claims of age discrimination, and the parties resolved that dispute in a July 2008 settlement agreement. In March 2008, the Borough passed over Campbell, then forty-six years old, when it appointed forty-four-year-old Paul Porfirio as its new Chief of Police.

In February 2009, Campbell brought suit under 42 U.S.C. § 1983 against the Borough and its council members: Brian Thornton, Peter Musinski, Kevin Lescavage, James Rose, John Hood, Peter Albano, and Terri Bugelholl (collectively, Defendants). Campbell alleged causes of action for: First Amendment retaliation, hostile work environment, failure to promote and retaliation in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, violation of the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. Ann. § 951, and civil conspiracy.[1] In

---

[1] Although Campbell's notice of appeal references a February 2010 order dismissing some of his constitutional claims, his intentional infliction of emotional distress claim, and all damages claims brought against the individual council members in

2

September 2011, the District Court granted Defendants' motion for summary judgment on Campbell's First Amendment retaliation and ADEA claims and dismissed his supplemental state-law claims for civil conspiracy and violations of the PHRA. This timely appeal followed.[2]

## II

We have jurisdiction over an appeal from a final decision of a district court under 28 U.S.C. § 1291. "We review an award of summary judgment *de novo*, applying the same test on review that the District Court should have applied" and construing facts in the light most favorable to the nonmoving party. *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 209 (3d Cir. 2005). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the

---

their official capacities, Campbell does not include any arguments challenging that order in his opening brief. Where an appellant fails "to set forth the issues raised on appeal and to present an argument in support of those issues in [his] opening brief . . . [he] normally has abandoned and waived th[ose] issue[s] on appeal and [they] need not be addressed by the court of appeals." *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993); *see also Simmons v. City of Phila.*, 947 F.3d 1042, 1065 (3d Cir. 1991) ("[A]bsent extraordinary circumstances, briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations."). Consequently, we will not review the February 2010 order.

[2] In November 2009, while this case was before the District Court, the Borough terminated Campbell for misreporting and accepting payment for his involvement with the Drug Abuse Resistance Education program between 2002 and 2007 in violation of both his official duties and Pennsylvania law. In February 2011, a jury convicted Campbell of five counts of theft in connection with that conduct.

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

We evaluate each of Campbell's six arguments in turn.

A

Campbell first contends that the District Court erred in accepting as true Defendants' statement of material facts and ignoring his own counterstatement of material facts. A review of the District Court's order and the Magistrate Judge's report on which it was based, however, reveals that the Court carefully considered both Campbell's counterstatement of material facts and Defendants' submission. Our review of those findings leads us to conclude—as did the District Court—that there existed no genuine dispute as to any material fact.

B

Campbell next claims that the District Court erred by determining that his July 2008 settlement agreement with the Borough barred him from alleging a cause of action for failure to promote him to Chief of Police. This argument is factually incorrect; the record clearly indicates that the District Court addressed Campbell's claim that the Borough discriminated and retaliated against him by failing to promote him.

C

In his third argument, Campbell asserts that the District Court erred by concluding that he did not provide sufficient detail concerning his hostile work environment and

4

retaliation claims. According to Campbell, the District Court ignored evidence of a conversation in which council member Musinski reportedly called Campbell a "greedy bastard." The record, however, indicates that the District Court did consider the comment. Furthermore, like the District Court, we find that the two isolated incidents in which council members spoke with Campbell about his prior lawsuit are insufficient to support his retaliation claim. "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). While "[t]he effect of the alleged conduct on the employee's freedom of speech 'need not be great in order to be actionable,' . . . it must be more than *de minimis*." *Id.* (quoting *Suppan*, 203 F.3d at 235). Campbell, who after suing the Borough in 2006 nonetheless continued to hold a position of considerable authority as Officer in Charge, had only a few brief interactions with council members, and the District Court properly concluded that those interactions would not have deterred a person of ordinary firmness from exercising his First Amendment rights.

D

Fourth, Campbell claims the District Court improperly granted summary judgment on his First Amendment retaliation claim. We disagree. "To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is

5

protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). A public employee's statement is protected activity only where (1) the employee spoke as a citizen (2) about a matter of public concern and (3) "the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Id.* at 241–42 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

Insofar as Campbell's retaliation claim is based on his request that the Borough award him additional compensation or benefits during the course of his employment, it fails because his speech did not involve a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 147 (1983) ("[W]hen a public employee speaks . . . upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.").

To the extent Campbell alleges retaliation for his prior federal lawsuit, that suit does not constitute protected activity. The Supreme Court has stated that when "a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases." *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2500 (2011). "[W]hether an employee's petition relates to a matter of public concern will depend on 'the content, form, and context of [the

6

petition], as revealed by the whole record.'" *Id.* (quoting *Connick*, 461 U.S. at 147–48). Accordingly, "[a] petition that 'involves nothing more than a complaint about a change in the employee's own duties' does not relate to a matter of public concern." *Id.* at 2501 (quoting *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 466 (1995)). Because nothing in the record suggests that Campbell's prior lawsuit touched upon a matter of public concern, we conclude that it does not qualify as protected activity.

In sum, because Campbell failed to make out a prima facie case of First Amendment retaliation, the District Court properly granted summary judgment in favor of Defendants with respect to that claim.

E

In his fifth argument, Campbell contends that the District Court erred in its disposition of his ADEA claims. Discrimination claims under the ADEA are analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Keller v. ORIX Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc). "A plaintiff must first produce evidence sufficient to convince a reasonable factfinder as to all of the elements of a prima facie case of discrimination." *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000). To establish a prima facie case, a plaintiff must show that "(1) he is over 40, (2) he is qualified for the position in question, (3) he suffered an adverse employment decision, and (4) he was replaced by a sufficiently younger person to create an inference of age discrimination." *Sempier v.*

7

*Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995). Once a plaintiff establishes a prima facie case, "[t]he burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the [adverse employment decision]." *Keller*, 130 F.3d at 1108. "The employer's burden at this stage is 'relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action].'" *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (quoting *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997)). To defeat summary judgment after an employer has articulated a legitimate, nondiscriminatory reason for the adverse action, the employee "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Campbell has failed to demonstrate a prima facie case of age discrimination. He offers no evidence to suggest that age was a factor in the Borough's personnel decisions generally or in its treatment of him in particular. Indeed, the only evidence Campbell does present—the eighteen-month age difference between himself and Porfirio—does not by itself give rise to an inference of age discrimination. *See Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 333 n.9 (3d Cir. 2000) (noting that an age difference of seven years

8

was insufficient to create an inference of discrimination).  Consequently, the District Court did not err in granting summary judgment to Defendants on Campbell's ADEA claims.

F

Finally, Campbell claims that the District Court should have exercised supplemental jurisdiction over his state-law claims for PHRA violations and civil conspiracy.  Because the District Court's summary judgment with respect to Campbell's federal claims was proper, the Court did not err by declining jurisdiction over the remaining state-law claims.  *See* 28 U.S.C. § 1367(c); *see also Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.").

III

For the foregoing reasons, we will affirm the judgment of the District Court.

9