**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2067
_____

ALBERT RONALD THOMPSON,
                                             Appellant

v.

BRIDGETON BOARD OF EDUCATION; TERRELL EVERETT,
Individual in his Official Capacity as Director of Human Resources
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 1:12-cv-06864)
District Judge: Honorable Noel L. Hillman
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 17, 2015
_____

Before: AMBRO, VANASKIE, and SHWARTZ, *Circuit Judges*.

(Opinion Filed:  May 29, 2015)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge*.

　　At issue in this case is whether the District Court properly granted summary

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

judgment for the Bridgeton Board of Education and Terrell Everett, its Director of Human Resources, after job applicant Albert Ronald Thompson brought a reverse discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a),[1] and a Fourteenth Amendment Equal Protection claim under 42 U.S.C. § 1983. Because Thompson has failed to put forward evidence from which a reasonable factfinder could conclude that Appellees' hiring process was a pretext for racial discrimination, we will affirm.

## I.

Appellant Albert Ronald Thompson has served his country and community with distinction throughout his life. He served as an Army officer during the Vietnam War, returned home, graduated first in his class from the New Jersey State Police Academy, and served in the State Police for 25 years. Upon retirement from the State Police, he continued his service, earning excellent reviews as an educational enforcement officer with the Bridgeton Public Schools, where he worked for more than a decade. For budgetary reasons, the Board terminated Thompson in 2010. When the Board advertised

---

[1] In his complaint, Thompson cites 42 U.S.C. § 2000e-3(a), though this provision of Title VII provides a means to seek relief for retaliation that is taken against an employee who participated in enforcement proceedings against the employer. Based on his allegations, Thompson more likely meant to refer to 42 U.S.C. § 2000e-2(a)(1), which prohibits an employer from "fail[ing] or refus[ing] to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

open educational enforcement officer positions in 2011, Thompson applied to get his old job back.

The Director of Security, Thompson's former boss Robert Stevens, wanted to rehire Thompson, but learned that Thompson would have to reapply in the general applicant pool. The final round of the selection process was a brief interview in which each candidate was asked the same ten questions. The hiring committee interviewed four candidates, including Thompson, for two open positions. Appellees contend that the committee made hiring decisions based only on performance in this formal interview. Stevens stated that in order to keep the process fair and objective for all applicants, he did not inform the other members of the selection committee of his positive opinion of Thompson's past performance.

According to Appellees, Thompson's interview did not go well. In depositions related to this litigation, two committee members familiar with the high quality of Thompson's prior work expressed their disappointment that he failed to convey his qualifications in the interview. Committee members recalled Thompson's answers to questions as short, incomplete, or lacking detail. While Appellees have not produced documents recording the committee's scores, committee members agree that in the final tally Thompson was not among the top two performers. Appellees claim that they selected the two highest-scoring applicants. Thompson is white; the committee recommended hiring one African American and one Hispanic candidate. One of these applicants had only one year of experience working as an aide at Bridgeton High School.

3

The hiring committee consisted of two white and two African American members. Two members stated that the committee did not discuss applicants' races, and one member stated that the committee had no affirmative action preference for minority candidates.

Thompson sued the Bridgeton Board of Education and Everett for reverse employment discrimination. According to Thompson, the interview process was a "*post hoc* creation <u>without any foundation</u>," Appellant Br. at 17 (emphasis in original), as evidenced by the fact that Appellees cannot produce interview score sheets, and that committee members only faintly recall Thompson's interview. He argues that because he was the most experienced and best qualified candidate, he must have been the victim of an impermissible preference for minority candidates.

## II.

The District Court had jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. We have appellate jurisdiction under 28 U.S.C. § 1291. Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the District Court's grant of summary judgment *de novo*, and view the evidence "in the light most favorable to the nonmoving party." *Heffernan v. City of Paterson*, 777 F.3d 147, 151 (3d Cir. 2015) (citations and quotations omitted). However, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citations and quotations omitted).

4

III.

We evaluate Thompson's Title VII and Equal Protection claims using the three-part burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In reverse-discrimination suits like this, (1) a plaintiff must establish a prima facie case of racial discrimination; (2) the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection,"; and (3) "[t]he plaintiff must be given the opportunity to introduce evidence that the proffered justification is merely a pretext for discrimination." *Iadimarco v. Runyon*, 190 F.3d 151, 157, 166 (3d Cir. 1999) (citations and quotations omitted). The parties do not contest that Thompson has established a prima facie case of discrimination, so we focus on prongs two and three.

A.

The second prong of the *McDonnell Douglas* framework asks whether Appellees articulated a legitimate, non-discriminatory reason for failing to hire Thompson. Appellees argue that other candidates outperformed Thompson in their interviews. Because poor interview performance is a legitimate non-discriminatory reason for refusal to hire, we agree with the District Court that Appellees met their burden at this step. *See Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 330 (3d Cir. 2000).[2]

---

[2] Thompson argues that the lack of documentary evidence prevents Appellees from meeting their burden here. However, we consider the nature of the evidentiary submissions, i.e., that Appellees rely on oral testimony and not contemporaneously-

5

Under the third prong of the *McDonnell Douglas* framework, we ask whether the "record clearly allows a reasonable fact finder to conclude that [Appellees'] proffered explanation was a pretext for race-based discrimination." *Iadimarco*, 190 F.3d at 166. Proving pretext "places a difficult burden on the plaintiff." *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir. 1994). To survive summary judgment, a plaintiff may "put forward 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence.'" *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (quoting *Fuentes,* 32 F.3d at 765) (emphasis in original). A plaintiff may also point to "*some evidence,* direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Iadimarco*, 190 F.3d at 166 (quoting *Fuentes,* 32 F.3d at 764) (emphasis in original).

Thompson argues that because his employment history made him the most qualified candidate, and he was not hired, we must conclude that the interview process was a pretext for discrimination. However, Appellees claim that they based their hiring decisions solely on interview scores, and under the *McDonnell Douglas* test we do not

---

generated documents, in analyzing whether Thompson rebutted Appellees' rationale as pretext in the third prong of the *McDonnell Douglas* test.

"second guess the method an employer uses to evaluate its employees." *Kautz*, 412 F.3d at 468. Thus, we reject his argument that a trier of fact could conclude that the interview process "was either a post hoc fabrication or otherwise did not actually motivate the employment action." *Fuentes*, 32 F.3d at 764.

Thompson is left with his argument that because Appellees cannot produce original documents from the interviews, and because committee members do not fully recall some details, a genuine issue of material fact exists as to whether Thompson should have been hired based on his interview performance. However, given the consistency of the committee members' testimony and the fact that Thompson fails to point to any evidence in the record from which a reasonable factfinder could conclude that Thompson's scores were marked down based on his race, we conclude that no reasonable factfinder could deem Appellees' explanation so unworthy of credence that it is probably pretext for discrimination.

Based on these facts, we conclude that Thompson failed to meet his burden in the third prong of the *McDonnell Douglas* test.

IV.

For the reasons set forth herein, we hold that Thompson failed to establish a genuine issue of material fact regarding whether Appellees intentionally discriminated against him on the basis of race. Accordingly, we will affirm the District Court's order entered March 28, 2014, granting summary judgment in favor of Appellees.