James M. FITZPATRICK, Plaintiff

v.

NATIONAL MOBILE TELEVISION; and IBEW LOCAL UNION NO. 45, Defendants

No. 3:03 CV 836.

United States District Court, M.D. Pennsylvania.

March 30, 2005.

887–88 (D.N.J.1997) (granting summary judg- ment for non-moving party).

James M. Fitzpatrick is Peter Loftus, Loftus Law Firm, P.C., Waverly, PA, for Plaintiff.

Christine A. Samsel and Laura E. FitzRandolph of Akin, Gump, Strauss, Hauer & Feld, LLP, Washington, DC, Local counsel for NMT.

Dan Brier and Donna Walsh, of Myers, Brier & Kelly, Scranton, PA, Local counsel for NMT.

## MEMORANDUM

MUNLEY, District Judge.

Presently before the court are Defendant National Mobile Television's ("NMT") summary judgment motion and Defendant IBEW Local Union No. 45's ("IBEW") motion to dismiss for lack of personal jurisdiction. Additionally, NMT has filed two motions to strike in response to the evidence presented by Plaintiff James M. Fitzpatrick ("Plaintiff") in opposition to its motion for summary judgment. These matters have been fully briefed and argued, and therefore are ripe for disposition. For the reasons that follow, we will grant NMT's motion to strike in part, and grant its motion for summary judgment. We will deny IBEW's motion to dismiss for lack of personal jurisdiction.

## I. Background [1]

Plaintiff was employed by NMT as a driver/technician, beginning on December 1, 2001. (Doc. 63, Pl.Ex. R. at ¶ 9 ("Pl. Aff."), Doc. 63, Pl.Ex. A. at 12–13 ("Pl. Dep.")). He was hired for a probationary period of six months. (Pl. Aff. at ¶ 13). On his first trip as a driver for NMT, Plaintiff was involved in an accident at Veterans Stadium in Philadelphia, Pennsylvania. (Pl. Dep. at 29–32). He was backing up in his truck and hit a street sign mounted on a light pole. (Pl. Aff. at ¶ 44). The accident put a "small scratch" in the paint of the vehicle. (Id.). Plaintiff could not see the sign in his truck mirrors because of the way the sign was mounted on the pole and because the sign was twelve feet off the ground. (Id.). Plaintiff reported this incident to his manager, Bob Baker. (Id. at ¶ 47). Baker agreed that the damage was "minor." (Doc. 49 Baker Decl. at ¶ 5). Baker, however, determined that the accident was preventable because

Plaintiff "could either have gotten out of the truck to determine that the path was clear or could have had another individual watch him back up to ensure that he did not hit anything." (Id.).

In March or April 2002, Plaintiff was involved in a reservation dispute with an employee of a Hampton Inn in Juno Beach, Florida. (Pl. Aff. at ¶ 57). As Plaintiff exited the lobby of the Hampton Inn, he stated, "I have stayed at hotels owned by Indian people before and I have never to this day including today, been completely satisfied with the stay." (Id. at ¶ 74). An NMT official questioned him regarding the incident, and Plaintiff explained that he had made this statement. (Id. at ¶¶ 79–80). Plaintiff signed an apology letter composed by an NMT official, but asserts that the company pressured him into signing it and that he had legitimate complaints. (Id. at 82–88).

In June of 2002, Plaintiff again backed into a stationary object. (Pl. Dep. at 35–36). On this occasion, Plaintiff was backing his truck into a garage at NMT's Sommerville New Jersey facility, and the garage door was not fully opened, and he backed the truck into the garage door. (Id.). Plaintiff claims the door "would not open to its full 14 foot height" but he proceeded to back the truck up anyway. (Pl. Aff. at ¶ 96). The fiberglass fairing on the truck was cracked, and the garage door was dented. (Id. at ¶ 96–97). As with the first accident, Baker determined that Plaintiff could have avoided the contact by exiting the truck to discern whether the path was clear or by enlisting another individual to watch him back up to ensure that he did not hit anything. (Baker Decl. at ¶ 5). Plaintiff reported the incident to Paul Wollack, the manager of the facility who witnessed the accident.

---

1. The parties strenuously dispute a number of facts at issue. The following background facts are undisputed, and we will address the contested facts in the discussion section.

(Pl. Aff. at ¶ 101, 108). Plaintiff did not report the accident to any other manager. (Pl. Dep. at 39–42). Following this accident, NMT suspended Plaintiff for the week of Sunday July 21 through Saturday July 27, 2002 without pay for failure to report the damage to an appropriate management supervisor. (Doc. 63 Pl.Ex. I; Pl. Dep. at 49 In. 19–23).

On August 11, 2002, Plaintiff had a third accident. (Pl. Aff. at ¶ 129). He was driving a truck on a narrow street that was part of the grounds of Yankee Stadium in New York, New York. (*Id.* at ¶ 135). At the time, his "moto-mirror" was not functional. (*Id.* at ¶ 131). The moto-mirror is a mirror that pivots to allow the driver to view objects around the vehicle that would otherwise be out of the purview of the mirrors. (*Id.* at ¶ 131). At the end of the street, Plaintiff needed to make a wide turn to exit the stadium grounds. (*Id.* at ¶ 135). Plaintiff was outside of his vehicle moving police barricades when a young man stopped his vehicle next to the passenger side of the truck near the curb. (*Id.* at ¶ 138, 140). The young man asked if he could "squeeze between the truck and the curb and [Plaintiff] told him he should wait or move." (*Id.* at ¶ 141). Plaintiff told him he should wait or move because the street was not wide enough for both vehicles. (*Id.* at ¶ 143). Plaintiff returned to his truck, and made a wide swing to execute his turn because he observed that the young man had moved his car. (*Id.* at ¶ 147). After Plaintiff made the turn, the young man asserted that Plaintiff hit his car. (*Id.* at ¶ 148). Plaintiff observed that the young man's rear plastic bumper needed to be replaced. (*Id.* at ¶ 155). Plaintiff assumed that the young man must have tried to back up while Plaintiff was making his turn, otherwise the accident would not have occurred. (*Id.* at ¶ 149; Pl. Dep. at 69 ln. 11–16). Plaintiff reported the accident to Bob Baker. (Pl. Aff. at ¶ 151). Baker determined that the accident could

have been prevented had Plaintiff waited long enough for the young man to move his car completely out of harm's way before moving the truck. (Baker Decl. at ¶ 6).

NMT terminated Plaintiff on August 13, 2002, two days after the Yankee stadium accident. (Pl. Aff. at ¶ 152). Bob Baker determined that Plaintiff should be terminated after this accident. (Baker Decl. at ¶ 8). Plaintiff was born on May 11, 1951, and therefore was fifty -one when he was terminated. (Pl. Aff. at ¶ 1).

Plaintiff filed suit alleging that NMT fired him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA") 43 PA. STAT. 951 *et seq.* Additionally he advanced a claim against IBEW asserting that they discriminated against him on the basis of age in violation of the ADEA. For the purposes of the instant summary judgment motion, we will not distinguish between the claims under the ADEA and the PHRA, as the analysis is the same. *See Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 972 (3d Cir. 1998).

## II. Jurisdiction

The Court exercises jurisdiction over this dispute pursuant to its federal question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367. Pennsylvania law applies to those claims considered pursuant to supplemental jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

## III. Standard of Review

Granting summary judgment is proper if the pleadings, depositions, answers to in-

terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Knabe v. Boury*, 114 F.3d 407, 410 n. 4 (3d Cir.1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson · v. · Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits,

depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

### III. Discussion

### A. NMT's Summary Judgment Motion

An employment discrimination plaintiff may establish a violation of the law in one of two ways. He may proceed either with direct evidence and the mixed-motives theory announced by the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), or he may proceed with circumstantial evidence and the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096 n. 4 (3d Cir.1995) (outlining the distinctions between a *McDonnell Douglas* and a *Price Waterhouse* case).

In the instant case, Plaintiff has presented no direct evidence of discrimination, and proceeds under the *McDonnell Douglas* burden-shifting analysis.[2] Under *McDonnell Douglas*, the plaintiff must first make a prima facie showing of discrimination. *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 352 n. 4 (3d Cir.1999). A plaintiff can establish a prima facie case by showing that: (1) he was a member of a protected class, *i.e.*, that he was over 40; (2) was qualified for the position; (3) suffered an adverse employment despite his qualifications; and (4) under circumstances that raise an inference of discriminatory action, the employer

---

**2.** Evidence is direct when it is "so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case to shift the burden of production." *Starceski*, 54 F.3d at 1096 n. 4 (citations omitted). "What is required is … direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Id.* (quoting *Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. 1775 (O'Connor, J., concurring)).

continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. *Sarullo v. United States Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003) (citations omitted). If the plaintiff cannot establish these elements, the defendant is entitled to judgment as a matter of law. *Pivirotto* 191 F.3d at 352 n. 4. If the plaintiff does establish a prima facie case, the burden of production shifts to the defendant and requires that he produce some evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Once the defendant does so, the plaintiff must prove by a preponderance of the evidence that the proffered nondiscriminatory reason was pretext and discriminatory animus was the actual reason for the employment action. *Id.* The plaintiff can create a genuine issue of material fact that the nondiscriminatory explanation is pretext "only if he submits evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 974 n. 2 (3d Cir.1998).

NMT argues that it is entitled to summary judgment because Plaintiff cannot establish a prima facie case of discrimination and because he cannot show that the legitimate non-discriminatory reasons for terminating his employment are pretext for discrimination. We will consider each issue separately.

### 1. Prima Facie Case

NMT concedes that Plaintiff can establish the first and third prongs of the *McDonnell Douglas* prima facie case, *i.e.*, that Plaintiff was a member of a protected class and that he suffered an adverse employment decision. NMT argues, however, that Plaintiff cannot establish the second element because he was not satis-

factorily performing his job, and he cannot establish the fourth element because his job duties were assumed by a forty-seven year old. After a careful review, we find that Plaintiff can establish the second element, but cannot establish the fourth because his replacement was not sufficiently younger to create an inference of discrimination.

### a. Second Element

■ Plaintiff has mischaracterized the second element of the *McDonnell Douglas* test as requiring that a plaintiff be able to show that he "was performing his job in a satisfactory manner." (Pl. Br. in Supp. at 11). In *Matczak v. Frankford Candy & Chocolate Company*, 136 F.3d 933, 938–39 (3d Cir.1997) the court found that a subjective analysis of a plaintiff's job performance is inappropriate at the prima facie stage, and is properly suited as a legitimate nondiscriminatory reason for termination. The court instead found that the proper inquiry is whether the plaintiff is objectively qualified to perform the job, stating, "[o]nce it concluded that [the plaintiff] was objectively qualified for the job, the district court should not have required Matczak to demonstrate that his performance met his employer's subjective expectations." *Id.* As NMT has presented no argument that Plaintiff was not objectively qualified and has argued only that Plaintiff has failed to meet NMT's subjective expectations, we find no genuine issue of material fact that Plaintiff has established the second element of the prima facie case.

### b. Fourth Element

■ However, we find no genuine issue of material fact that Plaintiff cannot establish the final element of the *McDonnell Douglas* prima facie test because he cannot show that he was replaced by an indi-

vidual sufficiently young enough to raise an inference of discrimination. Plaintiff's job duties were assumed by Mr. Speights, who was 47 years old when he took over Plaintiff's duties. (Doc. 50, DeLauro Decl. at ¶ 8). Plaintiff argues that the fourth element requires that he establish only that NMT had a continuing need for someone to perform Plaintiff's work after it terminated him. *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 354 (3d Cir. 1999). He argues NMT did not eliminate his job, and replaced him, and therefore he can establish the final element.

We recognize that both *Pivirotto* and *Matzcak* described the fourth element as requiring that the plaintiff demonstrate that the defendant had a continuing need for someone to perform the plaintiff's work. This is not the only requirement of the fourth element. Both *Pivirotto* and *Matzcak* reasoned that the ultimate requirement of a prima facie case is that the plaintiff raise an inference of discrimination, and the prima facie test is flexible and must be applied appropriately to the facts before the court. Furthermore, cases subsequent to *Pivirotto* and *Matzcak* establish that in the situation presently before the Court, Plaintiff must not only establish that NMT had a continuing need for his services, but also that NMT sought a replacement in a manner that raises an inference of discrimination.

In *Pivirotto*, the court found that the district court erred in instructing the jury that a gender discrimination complainant must demonstrate that she was replaced by an individual of the opposite gender. *Id.* at 355. The court reasoned that the central focus of the prima facie case is whether the plaintiff has created an inference that she was fired because of her protected status, stating "[t]he fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant to the prima facie case, so long as she lost out because of her gender." *Pivirotto*, 191 F.3d at 355 (citing *O'Connor v. Consolidated Coin Caterers Corporation*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)).

In reversing a district court that found that a plaintiff must establish that individuals outside the protected class were treated more favorably, the court in *Matzcak* articulated the fourth element of the prima facie test as requiring that a plaintiff establish that "after the rejection or firing, the employer sought applicants with the plaintiff's qualifications." *Id.* at 939. The *Matzcak* court reiterated, however, that "one prima facie standard cannot apply in 'every respect to differing factual situations.'" *Id.* at 940 (citing *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. 1817). Thus, both *Matzcak* and *Pivirotto* stand primarily for the proposition that the prima facie test should not be rigidly applied, and a Plaintiff must raise an inference of discrimination to satisfy the test.

In *O'Connor v. Consolidated Coin Caterers Corporation*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), the Supreme Court held that an age discrimination plaintiff need not establish that he was replaced by a individual outside the protected class, and reasoned instead that the focus is whether the plaintiff has provided "evidence adequate to create an inference than an employment decision was based on an illegal discriminatory criterion...." *Id.* at 312, 116 S.Ct. 1307 (citing *Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). The Court found that while proof of whether a plaintiff was replaced by an individual outside the protected class was irrelevant, "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination." *Id.* at 313, 116 S.Ct. 1307. Indeed, the Third Circuit has also reached this conclusion in the age discrimination context, ex-

plaining, "we hold that an ADEA plaintiff may establish the fourth element of the McDonnell Douglas test for a prima facie case by showing that s/he was replaced by a person sufficiently younger to permit an inference of age discrimination." *Maxfield v. Sinclair International,* 766 F.2d 788, 793 (3d Cir.1985).

Following *Pivirotto* and *Matzcak,* courts continued to adhere to the principle announced in *Maxfield,* and did not merely require that plaintiffs demonstrate that they were replaced, but that they were replaced under circumstances that raise an inference of discrimination.[3] In *Sarullo v. U.S. Postal Service,* 352 F.3d 789, 797 (3d Cir.2003), the court clarified the fourth element as requiring that a plaintiff to establish that *"under circumstances that raise an inference of discriminatory action,* the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position." *Id.* at 798 n. 7 (emphasis added). The court further reiterated that "the prima facie test remains flexible and must be tailored to fit the specific context in which it is applied" and required that the Plaintiff "must establish some causal nexus between his membership in a protected class and the [adverse employment] decision." *Id.* 797.

In another post-*Pivirotto* decision, the Third Circuit described the fourth element as requiring proof that "the employer ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination." *Narin v. Lower Merion School District,* 206 F.3d 323, 331 (3d Cir.2000). The court proceeded to find that the fifty-six year old plaintiff could not establish a prima facie case in two counts where her replacements were fifty-four and forty-nine, respectively, because "we cannot conclude that [the defendant] ultimately filled the ...positions · with *someone sufficiently younger to permit an inference of discrimination." Id.* at 333 n. 9. (emphasis added).

Therefore, we find that where a plaintiff is replaced following his termination, he must demonstrate not only that he was replaced, but that he was replaced under circumstances sufficient to infer a discriminatory action. NMT replaced Plaintiff, 51, with Mr. Speights, 47. This four-year age difference is insufficient to raise an inference of discriminatory action. Plaintiff has offered no evidence by which we may infer that he was fired because of his age, and argues solely that he is not required to and instead must prove only that NMT continued to seek out similarly qualified individuals.[4] Therefore, we find that

---

**3.** The *Pivirotto* court's reasoning confirms that this is the appropriate analysis in the age discrimination context. Although *Pivirotto* was a gender discrimination case, the court referred to age discrimination in holding that a woman does not need to prove that she was replaced by a man, just as "nothing in the ADEA requires that an age-discrimination plaintiff prove that he was replaced by someone under the age of 40 (*as opposed to someone sufficiently younger to create an inference of discrimination* )." *Pivirotto,* 191 F.3d at 357 (emphasis added). Thus, *Pivirotto* supports our conclusion that Plaintiff cannot satisfy his burden solely by showing that he was replaced, and must additionally show that he was replaced by someone sufficiently younger to create an inference of discrimination.

**4.** We recognize that there may be some circumstances wherein a plaintiff can demonstrate an inference of discrimination even if he is replaced by an insignificantly younger individual. As the court in *Pivirotto* explained, a fifty-one year old may be fired and replaced by another fifty-one year old man, and yet have been treated differently from similarly situated younger individuals. *Pivirotto,* 191 F.3d at 353–54. "An employee may be able to show that his race or other characteristic that the law places off limits tipped the scales against him, without regard to the demographic characteristics of his replacement." *Id.* at 354. The court explained that if the defendant terminates an older employee for a reason for which it would not have terminated a younger employee, the age of

Plaintiff has failed to establish the fourth element of a prima facie case of discrimination, and NMT is entitled to judgment as a matter of law.

### 2. Legitimate Non–Discriminatory Reasons

■ We find that even if Plaintiff could establish a prima facie case of discrimination, he has not shown that NMT's legitimate, nondiscriminatory reasons for firing him are pretext for discrimination. NMT has proffered Plaintiff's three accidents in a short period of time, his failure to report the second accident to the proper manager, and his incident at the Hampton Inn as legitimate and nondiscriminatory reasons for terminating Plaintiff. (DeLauro Decl. at ¶ 14; Doc. 63, Pl.Ex. N). The frequency and preventability of Plaintiff's created safety, property damage, insurance cost, and insurance related concerns. (*Id.*).

### 3. Pretext

Plaintiff can create a genuine issue of material fact that the nondiscriminatory explanation is pretext "only if he submits evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 974 n. 2 (3d Cir.1998). Under the first option, "a plaintiff can cast sufficient doubt on a defendant's legitimate non-discriminatory reason by showing

'weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable fact finder could rationally find them unworthy of credence.'" *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir.1996) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). In the alternative, a plaintiff can also survive summary judgment by pointing to evidence in the record which "allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994). "For example, the plaintiff may show that the employer has previously discriminated against [the plaintiff], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir.1998) (citing *Fuentes*, 32 F.3d at 765). "[A]n employer would be entitled to judgment as a matter of law ... if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant ... evidence that no discrimination had occurred." *Goodman v. Pennsylvania Turnpike Commission*, 293 F.3d 655, 673 (3d Cir.2002).

the older employee's replacement is immaterial. *Id.* Plaintiff, however, has made no such demonstration. He has argued solely that he must establish that NMT had a continuing need for his services after it terminated him and has advanced no argument in support of a causal nexus between his status in the protected class and the adverse employment decision. Plaintiff has raised a number of arguments that the evidence supports an inference of discrimination, but raises these arguments

in order to demonstrate that NMT's legitimate nondiscriminatory reasons are pretext. We find that even had Plaintiff advanced these arguments in support of his prima facie case, they are insufficient to establish an inference of discrimination or a causal nexus between his termination and his age, and we will address them following a discussion of NMT's legitimate nondiscriminatory reasons for their action.

Plaintiff advances three arguments to prove that NMT's reasons are pretext for discrimination. First, he argues that younger individuals received preferential treatment. Next, he argues that the accidents were never reported to an insurance company and the insurance company did not investigate the accidents, thus demonstrating that NMT's concern with insurance costs was pretext. Finally, Plaintiff argues that a March 20, 2003 memorandum discussing the termination of fifteen drivers demonstrates that NMT discriminates against older drivers. We will address each of these arguments separately.

### a. Preferential Treatment

Plaintiff argues that Baker's determination that his accidents were preventable is pretext and that younger drivers who were also in accidents were not fired. He additionally argues that younger drivers received preferential treatment because they were allowed to take trucks home for personal use.

### i. Preventable Accidents

█ Plaintiff argues that each of his accidents was unavoidable, and therefore NMT's reliance on the determination that these accidents were preventable as a basis for his termination was pretext. We disagree.

Regarding his first accident, Plaintiff explains that he backed into a sign that he could not see in his mirrors. (Pl. Aff. at ¶ 44). He contends that this accident was not his fault because he could not possibly have seen the sign because it was mounted twelve feet off the ground on a light pole. (Id.). Baker, however, ruled that this accident was preventable because Plaintiff could either have exited the truck to determine the clearance or engaged another individual to watch him as he backed up. (Baker Decl. at ¶ 5). Regardless of how the sign was mounted, Plaintiff has presented no evidence contradicting that he

would have been able to prevent the accident had he either exited the vehicle to determine the clearance or engaged the help of another individual.

Regarding his second accident, Plaintiff explains that the garage door would not open fully. (Pl. Aff. at ¶ 96). Again, he claims he could not anticipate the impact by looking in his mirrors. (Id.). As with the first accident, he has presented no evidence to dispute Baker's assessment that he could have prevented this accident by exiting his vehicle or employing the help of others.

Finally, he blames his third accident on the young man in the other car. He assumes that the other car must have moved, otherwise he would not have hit it. (Id. at ¶ 149). He additionally asserts that his mirrors were not functional that day. (Id. at 131.). Baker determined that Plaintiff could have prevented this accident had he waited for the other car to leave. (Baker Decl. at ¶ 6). Regardless of whether the other individual moved his car when Plaintiff did not expect him to, or regardless of whether the mirror was not working, Plaintiff could have avoided this accident had he waited for the young man to move his car. As with the first two accidents, Plaintiff's explanation does not refute Baker's determination or demonstrate that the determination was so incorrect that it could not have been sincere.

A plaintiff "cannot survive summary judgment under this prong simply by pointing to evidence that could convince a reasonable factfinder that he did as well as he could under the circumstances." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir.1997). Therefore, Plaintiff's explanations for his accidents are irrelevant unless "a factfinder could reasonably infer that the plaintiff satisfied the criterion identified by the employer or that the employer did not actually rely upon

the stated criterion." *Fuentes*, 32 F.3d at 767. "[T]he relevant question is not whether [the plaintiff] could have done better; instead, *[it] is whether the evidence shows that it was so clear that [the plaintiff] could not have done better that [the employer] could not have believed otherwise.*" *Keller*, 130 F.3d at 1109 (emphasis added). Plaintiff cannot meet this standard. While it is clear that Plaintiff's accidents did not occur in ideal driving situations, it is just as clear that Plaintiff did not satisfy the criterion identified by Baker; he did not leave his vehicle or employ help in his first two accidents, and he did not wait for the other young man to pull away in the third accident. It is not so clear that these accidents were unavoidable that NMT could not have believed otherwise. Indeed, the evidence suggests that had Plaintiff satisfied NMT's criterion, he would have prevented the accidents.

"[P]laintiff's view of his performance is not at issue; what matters is the perception of the decision maker." *Waldron v. SL Industries, Inc.*, 56 F.3d 491, 498 (3d Cir.1995) (finding that evidence that the plaintiff did in fact visit clients personally was not probative that the defendants' dissatisfaction with the plaintiff's efforts in personally visiting clients was pretextual). A reasonable factfinder could not find that Baker's determination that Plaintiff's accidents were preventable was "so clearly wrong that it cannot have been sincere," *Keller*, 130 F.3d at 1110, and therefore, we find that Plaintiff's explanations of his accidents do not create a genuine issue of material fact that NMT's explanation is pretext for discrimination.[5]

### ii. Other Drivers' Accidents

Plaintiff argues that three NMT drivers, Jim Zap, Sandra McLaughlin, and Jim Overton, were involved in accidents and were not fired. Therefore, he argues, NMT's explanation that Plaintiff was fired because of his frequent accidents was pretext. We disagree because Plaintiff cannot demonstrate that even a single driver was involved in three preventable accidents, much less three preventable accidents in such a short time period.

### *Jim Overton*

Plaintiff argues that Jim Overton "completely destroyed" a trailer and was not

---

5. Plaintiff similarly argues that the incident at the hotel was not his fault, that he had legitimate concerns, that an NMT official agreed that an individual at the hotel was "an obstinate jerk," that NMT forced him into signing a letter against his will, and that NMT did not support him in this incident. (Pl. Aff. at ¶ 57–94). What plaintiff does not dispute, is that he was involved in an incident, and he did make a comment that he was never satisfied with the service he received at Indian owned hotels. A plaintiff does not create a genuine issue of material fact that an employer's reliance on an incident is pretext by contesting the degree of the problem. *Billet v. CIGNA Corp.*, 940 F.2d 812, 826 (3d Cir.1991), *overruled in part on other grounds by St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In *Billet*, the defendants explained that they fired the plaintiff because he attended a meeting in an intoxicated manner, and yelled at and insulted his boss. *Id.* at 819. The plaintiff contested that he was drunk, and witnesses testified that there was a disruption but did not verify that he was insulting or insubordinate. *Id.* Plaintiff argued that he was never asked for his version of what happened, and therefore firing him because of this incident was pretextual. *Id.* at 824. The court rejected this argument, explaining "we reject Billet's assertion that [his employer's] failure to seek his version of the incident undermines its reliance on it as a reason for his termination, because while the degree of misconduct may be in doubt, he did cause a problem." *Id.* at 826. Similarly, while Plaintiff may dispute the degree of the problem he caused at the Hampton Inn, he admits to making a racially charged comment and causing a problem. Therefore, that he may have been upset and that NMT may not have handled the situation as he would have liked, is irrelevant to the question of whether NMT's reliance on this episode is pretext.

disciplined. (Pl. Aff. at ¶ 179(i)). NMT responds that this was one accident, that it deemed preventable, and furthermore Mr. Overton was born in 1948, and therefore is older than Plaintiff. (DeLauro Decl. at ¶ 10). For these reasons, we do not find Mr. Overton's accident relevant to our present analysis.

### Sandra McLaughlin

Plaintiff further argues that Sandra McLaughlin was involved in a number of accidents and was not disciplined. NMT responds that Sandra McLaughlin has never been involved in a preventable accident, and was born in 1960, and thus was over forty during the relevant time period. (DeLauro Decl. at ¶ 11). Furthermore, NMT's motion to strike argues that Plaintiff has not presented any evidence of Ms. McLaughlin's accidents that is based on personal knowledge of the declarant. We will first address the competency of the evidence.

■ In a summary judgment motion, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence" and must "show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e). *See also Petruzzi's IGA Supermarkets, Inc., v. Darling–Delaware Co.,* 998 F.2d 1224, 1234 n. 9 (3d Cir.1993) (observing that evidence introduced at summary judgment stage must be "capable of being admissible at trial"). Hearsay declarations in affidavits may be considered in summary judgment if the declarant would be available for trial and the declaration as set forth in the affidavit would be admissible if it were made by the declarant in court. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1542 (3d Cir. 1990).

■ A declarant is not competent to testify to matters beyond his personal knowledge. "A witness may not testify to

a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FED. R. EVID. 602. Thus, the record must establish the personal knowledge of an affiant, or that affiant's declarations may not be considered on summary judgement. *See Aronson v. Peoples Natural Gas Company,* 180 F.3d 558, 564 n. 2 (upholding district court's rejection of a verification offered in opposition to summary judgment because the verification failed to set forth facts "demonstrating [the verifier's] personal knowledge and competency to testify regarding the subject matter discussed").

■ Plaintiff's evidence regarding Sandra McLaughlin's accidents consists of the testimony of Jim Zap and Plaintiff himself. Jim Zap explains, "I am familiar with the fact that Sandra McLaughlin (30's), a New York Driver based out of the shop, has been in several accidents as well." Plaintiff filed another Jim Zap affidavit, amending the first, which explained that "this was common knowledge within the company." (Zap Am. Aff. at ¶ 2). We find that stating that Ms. McLaughlin's accidents were "common knowledge" does not establish Zap's "personal knowledge" of the accidents, as the "common knowledge" could be hearsay, or mere rumor or innuendo.

■ Plaintiff also presents his own testimony. He explains that he has knowledge of Sandra McLaughlin's accidents as follows:

I am aware of other younger employees of NMT that had several accidents during their tenure. One such employee was Sandra McLaughlin who had several infractions. I was told this by Anthony Cassano, an engineer in charge of the mobile unit I was assigned to. Mr. Cassano is obviously a reliable source because he worked on the trucks that Ms. McLaughlin damaged. To the best of

my knowledge, she was never given a suspension and she certainly wasn't terminated. She was taken off her truck and she wasn't off it for very long.

(Pl. Dep. at 74, 126, 159–161, 198; Pl. Aff. at ¶ 179(d)).

Herein, Plaintiff fails to set forth facts that would be admissible at trial, and fails to establish his personal knowledge of the accidents or the disciplinary actions taken. Plaintiff states that he learned that Ms. McLaughlin had damaged trucks from Mr. Cassano because Mr. Cassano worked on the damaged trucks. This does not establish how Mr. Cassano knew the truck was Ms. McLaughlin's, or that the damage was caused by Ms. McLaughlin, or even that the damage occurred while Ms. McLaughlin was in the vehicle. Plaintiff explains that Mr. Cassano's declaration is capable of being admissible at trial because "he's going to get slapped with a subpoena." (Oral Argument Transcript at 25, In 18–19).[6] However, even if Mr. Cassano testifies as Plaintiff states in his affidavit, this testimony will be inadmissible to support the proposition that Ms. McLaughlin was in accidents. This establishes only that Mr. Cassano "worked on" the truck, and thus knew that damage occurred to *a* truck, but does not establish that he had personal knowledge of *how* the damage occurred, or of *who* was operating the truck he repaired. Based on Plaintiff's affidavit, the Court cannot be sure that Mr. Cassano would not testify that his knowledge is based on what Ms. McLaughlin told him, which is hearsay, or that he assumed that the vehicle was operated by Ms. McLaughlin, or that he assumed that

the damage occurred in a moving accident, as opposed to being hit while parked.

We will not, indeed cannot under Federal Rule of Civil Procedure 56, assume that Mr. Cassano would present competent evidence in court without a basis for his personal knowledge in the record. To do so would eviscerate the requirement that affiants have personal knowledge. If an affiant must have personal knowledge, then certainly a hearsay declaration set forth by the affiant must be based on personal knowledge. *See, e.g., Davis v. Portline Transportes Maritime Internacional,* 16 F.3d 532, 537 n. 6 (3d Cir.1994) (rejecting affidavit in slip and fall case where affiant testified that the defendant knew the deck of its ship would be slippery because the affiant "did not demonstrate in his affidavit that he was competent to aver to the fact of [defendant's] knowledge, as he provided no support for a finding that he had personal knowledge of the matters attested to") (citing FED. R. CIV. P. 56(e), FED. R. EVID. 602); *see also Aronson v. Peoples Natural Gas Co.,* 180 F.3d 558, 564 n. 2 (3d Cir.1999) (affirming a district court's rejection of a witnesses verification that he had personal knowledge of a fact based on conversations with others because the verification was not based on personal knowledge and was based on hearsay). There is no reason that a hearsay declarant would be exempt from the requirement that his assertions be based in personal knowledge when the affiant himself is held to that standard. If anything, there is a greater concern that a hearsay declaration is not based on personal knowledge than a statement of the affiant himself. Furthermore, as Federal Rule of Civil Procedure 56 clearly states,

---

**6.** Plaintiff reads the rule allowing hearsay if 'capable of being presented at trial' to mean capable of being presented at trial if supported by personal knowledge or other facts other than those established in the record. As we will demonstrate, the proper rule is hearsay is competent in a summary judgment affidavit if *the facts in the record* establish that it will be capable of being presented at trial, but if such facts are not in the record, it is incompetent at the summary judgment stage.

Plaintiff must ensure that his evidence sets forth the basis for the affiant's personal knowledge. As Plaintiff has not satisfactorily explained how Mr. Cassano knew that Ms. McLaughlin was in an accident, we find that Plaintiff has not set forth competent evidence establishing that Ms. McLaughlin was in a number of accidents.

Furthermore, Plaintiff admitted in his deposition, in referring to Ms. McLaughlin's accidents, that "I don't know this to be a fact of accidents, but it was inferred to me that this person had more than one accident during her tenure at National Mobile Television." (Pl. Dep. at 74, ln. 5–9). Therefore, we will strike the portions of Plaintiff's affidavit and deposition that assert that Ms. McLaughlin had a number of accidents and, we find that Plaintiff has presented no competent evidence that Sandra McLaughlin was involved in a number of accidents and was not disciplined.[7] Thus, Plaintiff has not established that Ms. McLaughlin was a similarly situated younger driver who NMT treated more favorably.

Even if we were to consider this evidence, it does not prove that NMT treated similarly situated younger individuals more favorably. Plaintiff has presented no evidence as to whether Ms. McLaughlin's supposed accidents were preventable, how many accidents occurred, the period of time in which they occurred, or even the circumstances behind the accidents. To the contrary, NMT has demonstrated that Sandra McLaughlin was in no preventable accidents. (DeLauro Decl. at ¶ 11).

### *Jim Zap*

■ Jim Zap has presented his own affidavit which asserts, " I was hired as a truck driver in November of 1999. I am 42 years old. I had accidents while employed by NMT. It was a common occurrence in this type of field.... I had at least two minor accidents and then one in Pittsburgh where I hit a garbage dumpster which took off metal from the trailer." (Zap Am. Aff. at ¶ 2–8). Zap additionally testified that "another employee who was a new driver did ... damage on a truck... He went over railroad tracks and crushed the belly bays." (*Id.* at ¶ 10). Plaintiff offers no evidence regarding whether NMT determined that these accidents were preventable or of the time frame in which these accidents occurred.

In sum, Plaintiff has presented competent evidence that Jim Overton was involved in one accident, Jim Zap was involved in three, and an unnamed driver was involved in one accident. He has presented additional evidence that in Mr. Zap's opinion accidents were common, and that numerous NMT trucks and garage doors were dented, thus indicating that accidents occurred.

While Plaintiff has presented evidence that accidents and damage occurred, he has presented neither any evidence as to whether any of these accidents were preventable, nor any evidence of whether Bob Baker or another NMT official determined that these accidents were preventable. He has presented none of the background circumstances of the accidents, other than to explain that Jim Zap backed his truck into a dumpster.

Jim Zap is the only driver who, like Plaintiff, was involved in three accidents.

---

**7.** NMT has filed two motions to strike, which cover essentially every averment in Jim Zap's amended affidavit, Plaintiff's affidavit, and Plaintiff's supplemental affidavit (Doc. 71). To the extent the affidavit covers Ms. McLaughlin's driving record with NMT, we will grant the motion. However, as to the remaining sections, we will deny the motion to strike as moot because even considering this evidence, Plaintiff cannot create a genuine issue of material fact.

Plaintiff has failed to establish that a single one of Jim Zap's accidents was preventable, or the time frame in which Zap had these accidents. "The plaintiff has the burden of demonstrating that similarly situated persons were treated differently." *Simpson,* 142 F.3d 639, 645 (3d Cir.1998) (citing *Burdine,* 450 U.S. at 258, 101 S.Ct. 1089). "In determining whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the focus is on the *particular criteria or qualifications identified by the employer as the reason for the adverse action.*" *Id.* at 647 (emphasis added). The criterion identified by NMT is that Plaintiff was in three preventable accidents in an eight and one half month period. As Plaintiff cannot point to a single other individual who caused three preventable accidents in a similar time period, we find that he cannot create a genuine issue of material fact that NMT treated similarly situated younger drivers more favorably than Plaintiff.

### iii. Truck Use

Plaintiff argues that younger individuals received favorable treatment because a number of younger drivers were allowed to take trucks home for the evening for their own personal transportation. (Zap Am. Aff. at ¶ 17–18; Pl. Aff. at ¶ 179(*o*)-(p)). Neither Zap nor Plaintiff explain who at NMT allowed these younger drivers to use trucks for personal reasons. Plaintiff has presented no evidence nor even alleged that Baker or DeLauro, the two individuals who decided to fire him, allowed younger individuals to take trucks home. Furthermore, DeLauro has explained that "[d]rivers are allowed to take trucks home with them overnight *if they so request* and their home is on the way to their event the following day, provided that they have a safe and appropriate place to park the truck. Mr. Fitzpatrick would have been allowed to take a truck home with him if he met these criteria and *had asked to do so.*" (DeLauro Decl. at ¶ 12) (emphasis added). Plaintiff has presented no evidence nor even asserted either that the younger drivers who took trucks home failed to meet these criterion or that he satisfied these criterion and was still denied the opportunity to take his truck home. In fact, Plaintiff admitted that he never asked to take a truck home. (Pl. Dep. at 173 In. 9–13).

"Q: Did you ever ask to take a tractor home from Somerville? A: No, because I didn't think it was appropriate to take their tractor home to Somerville." (*Id.*).

Whether or not young drivers were allowed to take trucks home is irrelevant unless Plaintiff can demonstrate that NMT denied this privilege to older drivers. Plaintiff has not presented a single instance where an older employee was denied this privilege. Therefore, Plaintiff has not established that younger drivers were granted preferential treatment regarding personal use of the trucks.[8]

---

**8.** The remainder of Plaintiff's evidence of preferential treatment consists of conclusory statements with no evidentiary value. For example, Plaintiff states "younger people seem to have more leeway in what they could do versus what I, for instance, could not do. You hear about so and so failed a drug screen, still employed. So and so got arrested for possession of marijuana, still employed. They're not questioned and they continue to be employees of NMT." (Pl. Aff. at ¶ 179(m)-(n)). Jim Zap stated "the company definitely had their favorite people." (Zap Am. Aff. at ¶ 16). "I recall Brian Weiland (age 26) and Tod Allen (age 34) receiving preferential treatment. I witnessed it." (*Id.* at ¶ 19). "On the other hand, the company disliked Jim Fitzpatrick. This was also common knowledge amongst the employees. I knew specifically that Bob DeMonte and Bob Baker did not want him there." (*Id.* at 22). "Jim would voice his concerns and they didn't like that." (*Id.* at ¶ 25). Conclusory

### b. Insurance Issues

 Plaintiff next argues that NMT's assertion that it was "concerned" with insurance costs following Plaintiff's three accidents is implausible and therefore pretext for discrimination because NMT did not report the accidents to its insurance carrier. He explains,

> my driving record then and now has no defects on it, no accidents. If NMT reported this to an insurance company of any kind, the insurance company would have contacted Harrisburg and I would have gotten something from Harrisburg relative to insurance and driving. I also can't understand how this could have been reported to an insurance company without an insurance representative ever attempting to contact me for my version of the accident.

(Pl Aff. at ¶ 161–63).

Plaintiff asserts that "the burden is on them, to show what they are saying is correct. They are saying the insurance company—now this is the reason that was given—they are saying that the insurance company required that they get rid of him because he was a bad driver." (Oral Argument Transcript at 23). As an initial matter, it is not NMT's burden to establish that their reasons are the true reasons. Instead, "to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered non-discriminatory reasons must allow a factfinder reasonably to infer that each of the employer's proffered non discriminatory reasons ... was either a post hoc fabrication or otherwise did not actually motivate the employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994).

Furthermore, NMT never asserted that the insurance company required that it terminate Plaintiff. Instead, they explained as follows, "[b]ecause of the nature of our business, the number of accidents Mr. Fitzpatrick had in his first eight and a half months of employment, and the pre-

---

statements such as these do not create a genuine issue of material fact. *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir.1985) (finding that the district court erred in relying on a conclusory affidavit that failed to establish the affiant's personal knowledge); *see also Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir.2002) (finding that the plaintiff did not establish the fact that she could not afford arbitrator's fees by filing an affidavit that stated as much and provided her monthly income and bills because "[a]n affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's [or non-movant's] burden.") (alteration in original) (citing *Maldonado*, 757 F.2d at 51). A plaintiff cannot survive summary judgment merely by asserting he was discriminated against without providing specific facts. "[The witness'] affidavit only makes generalized assertions that [the plaintiff] was discriminated against by [the defendant]. It does not criticize the purported reasons for [the plaintiff's] demotion and does not contradict [the defendant's] reasons so as to show pretext." *Hicks v. Arthur*, 878 F.Supp. 737, 743 (E.D.Pa.1995). Thus, Plaintiff's and

Zap's bald assertions that the company favored younger employees without providing specific, or any facts at all, is insufficient to meet their burden at summary judgment because it does not allow a factfinder to reasonably disbelieve the articulated nondiscriminatory reasons or to believe that discrimination was more likely than not a determinative cause.

Additionally, Plaintiff recites a number of irrelevant work incidents. He notes that on one occasion he was booked on United Airlines whereas other employees were booked on U.S. Air; (Pl. Aff. at ¶ 179(t)); an unnamed individual accused him of taking seats out of a truck; (*Id.* at ¶ 179(v)); a fellow employee, Bob Gray, failed to return a rental car on time, (*Id.* at ¶ 179(s)); other individuals either left work early or arrived late, (*Id.* at ¶ 179(r)); and Paul Wollack told him he was a "dead man walking." (*Id.* at ¶ 179(u)). Not a *single* one of these incidents relates in any way to either age discrimination or NMT's proffered legitimate non-discriminatory reasons. Therefore, we find them irrelevant to our present analysis.

ventable nature of the accidents, caused NMT to be *concerned* with safety, *further* damage to trucks and other property, and *increasing* insurance costs and liabilities." (DeLauro Decl. at ¶ 14) (emphasis added). NMT does not offer that it fired Plaintiff because of the insurance ramifications of his accidents, but because of a concern about the insurance ramifications, and the further consequences of continuing to employ him. Furthermore, the circumstances behind the firing indicate that they were concerned with the consequences, not that the consequences required that they terminate Plaintiff. NMT fired Plaintiff only two days after his third accident, while they were concerned but before any of insurance problems had time to materialize.

It is undisputed that these three accidents occurred. We cannot substitute our judgment for the employer's, so long as the employer's decision was not based on discrimination. "The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination.]" *Simpson,* 142 F.3d at 647 (citations omitted). Thus, whether or not NMT was correct to be concerned about the effects of Plaintiff's poor driving, or whether any of their concerns ever materialized, is irrelevant. "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discrim-

inatory animus motivated the employer, not whether the employer is wise, shrewd or competent." *Fuentes,* 32 F.3d at 765. With the record before us, we can conclusively say no reasonable jury could disbelieve that NMT was concerned about the ramifications of continuing to employ Plaintiff after he caused his third accident in under nine months, merely because Plaintiff can demonstrate that after they terminated him the consequences did not materialize.[9]

### c. The Memorandum

 Finally, Plaintiff argues that the March 20, 2003 memorandum from NMT to its employees, which explained that management would visit various locations to discuss fifteen layoffs, does not reflect who specifically was laid off, and therefore the memorandum does not demonstrate that NMT did not discriminate in effectuating these lay-offs. As an initial matter, Plaintiff again misconstrues NMT's burden at this stage of the analysis. It is Plaintiff's burden to prove that NMT's nondiscriminatory reasons are pretext, not NMT's burden to demonstrate that its nondiscriminatory reasons were in fact the real reasons. *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994).

Furthermore, Plaintiff has failed to explain the relevance of the document. While the document does refer to a number of lay-offs, it makes no reference to Plaintiff and was drafted six months after

---

9. Additionally, Plaintiff has presented no proof of the actual insurance consequences to NMT or whether they reported these accidents to their insurance carrier. He has only shown that his driving record does not contain a report of an accident and the insurance company never contacted him personally. It would be unreasonable to infer, based on this evidence, that NMT never contacted its insurance carrier. The Court cannot take judicial notice and the Plaintiff has presented no evidence of insurance companies' accident pro-

cessing procedures, or of the method by which driving records are maintained. Additionally, it is not NMT's burden to prove that it contacted its insurance carrier, because as we have mentioned, it is Plaintiff's burden to establish that NMT's reasons are pretext. Plaintiff does not carry this burden by mentioning that his driving record does not contain an accident and that no insurance company contacted him, while he admits to being in the three accidents in question.

he was fired. A single document referencing layoffs, without explaining the ages of the impacted employees, does not allow a reasonable factfinder to find that discrimination more likely than not occurred in a different firing.

Moreover, NMT has established that these layoffs do not raise an inference of discrimination nor in any way rebut NMT's nondiscriminatory reasons for firing Plaintiff. When NMT fired Plaintiff, 71 percent of NMT's drivers were age 40 and over, and 27 percent of the drivers were older than Plaintiff. (DeLauro Decl. at ¶ 15). Following these layoffs, as of July 2004, 80 percent of NMT's drivers were over 40, and approximately 27 percent were over 51. (*Id.*). Thus, the layoffs mentioned in the memorandum actually increased the percentage of drivers over 40, and the percentage over 51 remained the same. Plaintiff has pointed to no evidence tending to demonstrate that the layoffs mentioned in the memo evince a discriminatory animus, and instead relies on the mistaken assumption that NMT has the burden to establish its reasons are not pretext. Thus, we find that the March, 20, 2003 memorandum or the layoffs mentioned therein are in no way probative of discrimination and do not call NMT's nondiscriminatory reasons into question.

### d. Pretext Conclusion

Plaintiff has established that other drivers were involved in accidents, he thought that he did the best he could, and NMT's concerns about increasing insurance costs may not have materialized as expected. However, he does not dispute that he was involved in three accidents and an incident at the Hampton Inn where he made a racially charged statement. Plaintiff merely argues that NMT placed too much emphasis on these incidents and should not have fired him as a result. Given the record before us, no reasonable factfinder could disbelieve that NMT fired Plaintiff because he caused three accidents in an eight and one half month period and caused a problem at the Hampton Inn.

Furthermore, no reasonable factfinder could find that age discrimination was more likely than not a motivating or determinative factor in NMT's decision to terminate Plaintiff. Plaintiff has failed to present a single instance of favorable treatment for younger employees, and he has presented no evidence of situations where he, or other older employees, were discriminated against. Additionally, NMT's evidence tends to prove that no age discrimination occurred. Plaintiff asserts that Jim Overton is an example of a younger individual who was in an accident but was not disciplined, but Jim Overton is older than Plaintiff. Also, Bob Baker hired Plaintiff when he was 50, and then after he worked for eight and one half months, fired him at age 51. *Waldron v. SL Industries,* 56 F.3d 491, 496 n. 6 (3d Cir.1995) (finding evidence that "the hirer and firer are the same and the discharge occurred soon after the plaintiff was hired" was probative of a lack of discrimination). Moreover, 27 percent of NMT's work force was over Plaintiff's age when he was fired and 71 percent was over 40. During his brief tenure, Plaintiff backed his truck into a sign and a garage. Plaintiff failed to report this second accident to the proper manager. Plaintiff was suspended for a week following the second accident. When Plaintiff was in a third accident, NMT terminated him two days later. Therefore, we find that Plaintiff has not submitted "evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Connors v. Chrysler Financial Corp.,* 160 F.3d 971, 974 n. 2 (3d Cir.1998).

Plaintiff has failed to establish a prima facie case, and even if he could, he cannot create a genuine issue of material fact that NMT's legitimate, nondiscriminatory reasons were pretext for discrimination. Accordingly, we will grant summary judgment on behalf of NMT.

**B. IBEW's Motion to Dismiss for Lack of Personal Jurisdiction**

 IBEW argues that it is a California local union with no employees or offices in Pennsylvania, and therefore this Court lacks personal jurisdiction over it. We find that IBEW has sufficient minimum contacts to justify this Court's assertion of jurisdiction because IBEW has twelve members in Pennsylvania, and these members vote by mail ballot in Pennsylvania, and IBEW collects dues from these members.

 As Pennsylvania is the forum state, we have personal jurisdiction to the extent permitted by Pennsylvania law. FED. R. CIV. P. 4(e). The Pennsylvania long arm statute authorizes personal jurisdiction to the full extent permitted under the Due Process Clause of the Fourteenth Amendment. *Pennzoil Products Co. v. Colelli & Associates,* 149 F.3d 197, 200 (3d Cir.1998). To satisfy the constitution, a state may have either general or specific personal jurisdiction, but as neither party has alleged that we have general jurisdiction over IBEW, we will analyze solely whether we have specific personal jurisdiction. *Id.*

To make a finding of specific jurisdiction, a court generally applies two standards, the first mandatory and the second discretionary. These standards serve to ensure that defendants receive due process as required by the Fourteenth Amendment. First, a court must determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." Second, assuming minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Although the latter standard need only be applied at a court's discretion, we have generally chosen to engage in this second tier of analysis in determining questions of personal jurisdiction.

*Id.* (citations omitted).

We find that in the present circumstances defendant could have reasonably anticipated being haled into court in Pennsylvania and the assertion of personal jurisdiction in the present case comports with fair play and substantial judgment. IBEW has thirteen members who reside in Pennsylvania, who pay between $7,500 and $9,000 per year in membership dues. (Doc. 44–2, Pl.Ex. A. at ¶ 2–3). IBEW additionally has a union steward who resides in Pennsylvania. (*Id.* at ¶ 8). IBEW sends union ballots to members in the mail, and then the members mail the ballot back to Los Angeles. (*Id.* at ¶ 16).

We find that these contacts satisfy that IBEW has minimum contacts with Pennsylvania. IBEW is an organization that represents individuals who live in Pennsylvania. This litigation arises directly from a dispute between IBEW and one of these Pennsylvania members. Furthermore, IBEW collects dues from these members. Thus, IBEW has minimum contacts with Pennsylvania, and our assertion of personal jurisdiction is consistent with fair play and substantial justice. Accordingly, we will deny IBEW's motion to dismiss. An appropriate order follows.

**ORDER**

**AND NOW,** to wit, this 17th day of March 2005, it is hereby **ORDERED** that:

1) Defendant National Mobile Television's ("NMT") motion to strike (Doc. 66) is **GRANTED** to the extent discussed in the attached memorandum.

2) Defendant NMT's motion for summary judgment (Doc. 46) is **GRANTED**.

3) Defendant NMT's motion to strike late filed affidavits (Doc 73) is **DENIED** as moot.

4). Defendant IBEW Local Union No. 45's motion to dismiss for lack of personal jurisdiction (Doc. 37) is **DENIED**.

### ORDER

**AND NOW**, to wit, this 30 day of March 2005, for the purposes of clarification, the portion of our March 17, 2005 memorandum (Doc. 83) referencing a Pennsylvania Human Relations Act claim against Defendant National Mobile Television is hereby **STRICKEN** because this claim was dismissed in our March 8, 2004 opinion (Doc 29).